**FORDECK–KEMERLY ELECTRIC, INC., Interior Products Supply, a Division of Strahm Group, Inc., Appellants,**

v.

**James J. HELMKAMP, Ann
M. Helmkamp, et al.,
Appellees.**

**No. 17A03–9111–CV–354.**

Court of Appeals of Indiana,
Third District.

May 18, 1992.

Transfer Denied July 27, 1992.

Ronald J. Tirpak, Schenkel & Tirpak, Fort Wayne, for Interior Products Supply.

William E. Harris, John C. Bohdan, II, Moss, Crowell, Harris, Yates & Long, Fort Wayne, for Fordeck–Kemerly Electric, Inc.

James P. McCanna, Vanhorne, Turner, Stuckey & McCanna, Auburn, for appellees.

STATON, Judge.

Fordeck–Kemerly Electric, Inc. and Interior Products Supply appeal from a judgment in favor of James and Ann Helmkamp refusing to enforce mechanics liens on certain real estate owned by the Helmkamps. They raise two issues, which we consolidate as one:

> Whether a recorded "Addendum to Construction Agreement" was enforceable as a no-lien contract pursuant to Indiana Code 32–8–3–1.

We affirm.

The record reveals that James and Ann Helmkamp are engaged in the retail sale of automobiles under the corporate guise of Helmkamp, Inc., a closely held corporation of which they are the shareholders. For a number of years the business operated in downtown Auburn. Later, in 1988, the Helmkamps decided they had outgrown their downtown location and sought a new location for expansion. On July 21, 1988, the Helmkamps personally purchased a 3.7 acre parcel of unimproved real estate located on the northwest corner of the intersection of Fifteenth Street and Grandstaff Drive on Auburn's west side. They leased the land to Helmkamp, Inc. and began planning the construction of a new building.

For the construction of the building, the Helmkamps contacted R.W. Kain, Inc., the malefactor in this saga.[1] Kain agreed to build the building for the sum of $522,000 pursuant to a construction agreement signed by James Helmkamp on September 22, 1988 as President of Helmkamp, Inc. On November 8, 1988, the Helmkamps and Kain executed an "Addendum to Construction Agreement." The Addendum, which was recorded on November 9, included a "no-lien" contract which provided that Kain and its subcontractors would not cause any

---

1. The trial court found "[t]hat the legal obligation for payment to the various subcontractors for labor or materials provided for the building construction project is the obligation of general contractor Defendant R.W. Kain, Inc. and not of Defendants James J. Helmkamp and Ann M. Helmkamp." Record, p. 214. After receiving full payment for the building, Kain sought relief under Chapter 7 of the Federal Bankruptcy Code, leaving a number of its subcontractors, including the Appellants, unpaid.

liens to be filed against the Helmkamps' real estate.

Construction progressed on the building, and the full amount due pursuant to the contract was paid to Kain.[2] Helmkamps later discovered that several subcontractors, including Fordeck–Kemerly Electric, Inc. (Fordeck) and Interior Products Supply (IPS), were not fully paid for the work that they performed on the project. Fordeck and IPS filed mechanic's liens, and Fordeck filed this action to foreclose, naming IPS as a party defendant. The trial court found that the no-lien contract between the Helmkamps and Kain was valid and entered judgment for the Helmkamps. Fordeck and IPS (hereinafter referred to collectively as "Subcontractors") appeal.

■ When a party has requested specific findings of fact and conclusions of law under Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, the court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *transfer denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *reh'g denied.* Too, findings of fact may be assailed as clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ Subcontractors challenge the trial court's conclusion that the Addendum to the Construction Agreement was a valid no-lien contract. They first argue that the Addendum did not contain a sufficient legal description to pass muster under Indiana Code 32–8–3–1. The Addendum referred to "Owner's real estate situated at the intersection of Fifteenth Street and Grandstaff Drive in Auburn, DeKalb County, State of Indiana." Indiana Code 32–8–3–1 provides in relevant part:

No provision or stipulation in the contract of the owner and principal contractor that no lien shall attach to the real estate, building, structure or any other improvement of the owner shall be valid against subcontractors, mechanics, journeymen, laborers or persons performing labor upon or furnishing materials or machinery for such property or improvement of the owner, unless the contract containing such provision or stipulation shall be in writing and shall contain specific reference, by legal description of the real estate to be improved and shall be acknowledged as provided in case of deeds and filed and recorded in the recorder's office of the county in which such real estate, building, structure or other improvement is situated not more than five (5) days after the date of execution of such contract. The contract herein provided for shall be without effect upon labor, material or machinery supplied prior to the time of the filing with the recorder of said contract. The recorder shall record such contract at length in the order of time of its reception in books proved by him for that purpose, and the recorder shall index the same in the name of the contractor and in the name of the owner, in books kept for that purpose, and said recorder shall receive therefor a fee such as is provided for the recording of deeds and mortgages in his office.

■ Indiana courts have not found no-lien contracts to be invalid by a mere defi-

---

**2.** Kain was paid $509,083.00. The trial court found that this figure differed from the contract price due to changes both eliminating and adding certain tasks to the construction agreement and also due to penalties deducted from the price for Kain's failure to complete construction on time. Record, p. 207.

ciency in legal description. *Carey Concrete v. Family Dollar Stores* (1989), Ind. App., 542 N.E.2d 1021, 1022. Instead, courts look to see if "[t]he description of the property as set out in the contract was sufficient to give the [prospective lienholder] notice of the real estate on which the building mentioned in the contract was to be erected." *Clarage v. Palace Theater Corp.* (1929), 95 Ind.App. 443, 449, 165 N.E. 550, 552, *quoted in Carey Concrete, supra*, at 1022. Pursuant to statute, no-lien contracts are indexed in the name of the contractor and owner. The clear purpose of the statute is to provide record notice of the no-lien contract to subcontractors, materialmen, and other individuals who, in the absence of such an agreement, would be entitled to place a mechanic's lien on the premises. Thus, a description which allows the subcontractor to differentiate between no-lien contracts recorded by the same property owner is sufficient to comply with the statute. *Id.* at 1023.[3]

The description here is similar to that in *Clarage, supra*, where the contract "provided for the erection of a building at the 'north west corner of Michigan Street and Colfax Avenue' in South Bend, Indiana." *Id.* at 445, 165 N.E. at 550. While it is true that the no-lien contract here did not specify which corner of the intersection the property was located on, the trial court found that the Helmkamps' real estate was the only corner of the intersection which was unimproved and upon which construction was being· performed. All others had existing commercial buildings and paved parking lots. Further, the no-lien contract described the type of building being constructed and stated that it was to be used as an automobile dealership. There were no other automobile dealerships at the intersection. The evidence supports the trial court's finding that the description of the property contained in the no-lien contract was sufficient to comply with Indiana Code 32–8–3–1.

■ Subcontractors next contend that the no-lien contract was lacking in consideration. A waiver of mechanic's liens should be supported by consideration in order to be effective. *Ramsey v. Peoples Trust & Savings* (1970), 148 Ind.App. 167, 264 N.E.2d 111, 115. With regard to this issue, the trial court found the following:

49. That Defendant James J. Helmkamp's verbal promise to Defendant R.W. Kain, Inc. contemporaneously with his signing of the November 8, 1988 Addendum to Construction Agreement (no-lien contract) that he and his wife would personally be making the contract payments is a benefit to promisee R.W. Kain, Inc. and a detriment to promisor James J. Helmkamp and is a promise made in exchange for the written promises of R.W. Kain, Inc. and therefore the November 8, 1988 Addendum To Construction Agreement (no-lien contract) is supported by consideration and is not invalid for lack of consideration.

Record, pp. 211–212.[4] Subcontractors contend that the language in Indiana Code 32–8–3–1 stating, "... the contract containing

---

**3.** Subcontractors point to a 1963 amendment to the statute which inserted the language requiring a legal description. Citing *Froberg v. Northern Indiana Const., Inc.* (1981), Ind.App., 416 N.E.2d 451, *transfer denied*, they contend the amendment is evidence the legislature intended that a no-lien contract must contain a strictly accurate legal description of the real estate in order to be enforceable against a third party. *Froberg* addressed a similar amendment to IC 32–8–3–3, the statute outlining the notice requirements for mechanic's liens. There, we held that the purpose of the legal description requirement was to enable the land to be identified from the notice of mechanic's lien alone. *Froberg, supra*, at 454. The notice in *Froberg* contained the legal description of an entirely different parcel of land from that on which the

work was performed, and was therefore inadequate. *Froberg* is thus distinguishable from this case, where the description of the real estate is accurate, albeit not a complete legal description. Nonetheless, we do not deviate here from the principle articulated in *Froberg* that the land should be identifiable from the recorded document (here the no-lien contract). Finally, we note that *Carey Concrete, supra*, was decided under the current version of the statute.

**4.** The trial court found that the contract was supported by consideration on two other alternate bases. As we hold that the trial court's judgment with regard to this issue can be supported by Finding 49 alone, we need not address the court's other findings on this issue.

[the no-lien] provision or stipulation shall be in writing ..." requires the consideration for a no-lien contract to be in writing.[5] They rely on *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978), 175 Ind.App. 416, 372 N.E.2d 742, *transfer denied* and *Torres v. Meyer Paving Company* (1981), Ind.App., 423 N.E.2d 692, *transfer denied.*

There is nothing in *Urbanational* and *Torres* that requires the consideration for a no-lien contract to be in writing. Both *Urbanational* and *Torres* address the question whether the no-lien contract incorporated the master contract (and therefore the consideration recited therein) as a part of the no-lien contract. *Torres* found that there was a proper incorporation by reference and *Urbanational* did not. This case differs from both *Urbanational* and *Torres* in that while the no-lien contract explicitly referred to the master contract, there was independent consideration to support the no-lien contract. Since the no-lien contract in the present case was executed at some time after the master contract, it was a written modification of the master contract. As such, of course, it required independent consideration. *Burras v. Canal Const. and Design Co.* (1984), Ind.App., 470 N.E.2d 1362. This consideration was provided by the Helmkamps' promise to become personally liable to Kain for payment on the construction contract.[6]

■ We think it clear that the requirement that the no-lien agreement be in writing is a natural complement to the requirement that it be recorded. We fail to see how the purpose of the statute—record notice—is served by a requirement that the consideration for the contract be in writing. We therefore hold that the mere fact that the consideration for a no-lien contract is oral will not render the agreement unen-

forceable against subcontractors and other parties who would be entitled to file mechanic's liens but for the existence of such an agreement.

Finally, Subcontractors cite *Citizen's Progress Co. v. James O. Held & Co.* (1982), Ind.App., 438 N.E.2d 1016 for the proposition that a contract that is partly written and partly parol is "a mere oral contract." *Id.* at 1021. Thus, they conclude that the no-lien agreement was not in writing for purposes of the statute. While certainly original, this argument lacks merit.

The rule stated in *Citizen's Progress* is operative for the purpose of the statute of frauds and the like, *Sheldmyer v. Bias* (1942), 112 Ind.App. 522, 45 N.E.2d 347, but should not be applied to Indiana Code 32–8–3–1, where the writing requirement facilitates the recording of notice of no-lien agreements. The writing here served the purpose of the statute—it was sufficient to apprise Subcontractors that Kain and the Helmkamps had entered into a no-lien agreement on the subject real estate.

We conclude the evidence supports the trial court's finding that the no-lien contract was in compliance with Indiana Code 32–8–3–1, and that the findings support the judgment in favor of the Helmkamps and against Subcontractors. Accordingly, we affirm the judgment of the trial court in its entirety.

GARRARD, J., concurs.

RATLIFF, C.J., concurs and files separate opinion, in which GARRARD, J., concurs.

RATLIFF, Chief Judge, concurring.

I fully concur in the opinion of Judge Staton, however, I write separately to address a matter which is obvious from the

5. Subcontractors place their reliance on the no-lien statute. They do not raise the issue of whether the Helmkamps' promise, as a promise to answer for the debt of another (the corporation) is unenforceable pursuant to the statute of frauds. IC 32–2–1–1.

6. Subcontractors make much of the fact that the construction contract was executed by James Helmkamp as president of Helmkamp, Inc.,

while the no-lien agreement was executed by James and Ann Helmkamp personally. Since the trial court found that the consideration for the no-lien agreement was an agreement by the Helmkamps to become personally liable for the obligations under the construction contract, we do not find it unusual that the no-lien agreement was executed personally, rather than in the Helmkamps' corporate capacity.

facts and deserves our comment although it in no way affects the decision in this case.

The oral agreement between the Helmkamps and Kain, which forms the consideration for the no-lien addendum, wherein the Helmkamps agreed to make the payments due under the construction contract, constitutes an agreement to answer for the debt of another, and was within the Statute of Frauds. IND.CODE § 32–2–1–1.

However, no issue of the Statute of Frauds was raised, nor could such issue have been raised by Fordeck. The Statute of Frauds is an issue ordinarily available only to those parties to the agreement to which the statute may apply, and those in privity with them, and may not be invoked by third parties or strangers. 73 Am. Jur.2d *Statute of Frauds*, §§ 576, 578. Neither can it be invoked by a creditor of one of the parties. *Id.* § 579. Further, in this case, the oral agreement between the Helmkamps and Kain had been performed by the Helmkamps. Thus, for all of the reasons stated, no Statute of Frauds issue existed in this case.

I make these observations only to make it clear that our decision not be construed as conferring any validity upon such an oral agreement had the Statute of Frauds been available as an issue and applicable under appropriate facts.